All right, Mr. Grissom, then. All right, Mr. Grissom, then. Am I pronouncing that right? You are. Okay. All right. You've reserved two minutes for rebuttal, so that gives you eight to begin. Good morning. Thank you. Matthew Brissenden for Frank Parasmo. So in Rwanda, the Supreme Court emphasized the importance of a robust mens rea standard in order to protect well-intended positions in borderline cases. This is exactly that case. The district court here erred when it instructed the jury that acting in good faith means acting reasonably. This is precisely the type of objectively reasonable good faith standard that the Supreme Court expressly rejected in Rwanda. And I think the government has done its best here to sort of muddy up the waters as to what this charge was, but it can't run away from the record here. Because in front of the district court and in front of the jury, prosecutors pointed to this exact language, this portion of the charge, and they told the judge and they told the jury that this charge created an objective standard. They told the jury that the defendant's subjective intent didn't matter under this charge. So the government can't run away from that construction at this juncture. When you say that instruction, you mean, I guess, the mens rea instruction combined with the good faith instruction, right? Yeah. The instruction in its entirety, right, and I focused in particular on this language towards the tail end where the judge expressly told the jury that good faith in this context means acting reasonably, because I think it's that language that really created this hook for the government to argue to the jury and throughout the case that it's not enough for him to subjectively believe that what he's doing is right. It has to be objective. In fairness to Judge Azraq, I mean, that was consistent with Second Circuit law. You don't disagree with that? I don't. I think it derives exactly from this court's decision in the United States v. Vamos, which is a 1986 decision. But it's worth noting that even in that case, this circuit described that as an objective standard. And so I agree. The law was different at the time this case was tried, but I think it's also abundantly clear that that is no longer the law and that it was incorrect as it was charged. So is it your view that after Ruan there's no, basically there's no place for a good faith instruction at all, really? This is all then should be handled up front in describing the mens rea required. I think there still is a place for a good faith instruction, but you need to be clear if you're giving that instruction that it's subjective good faith. It's not objective good faith. But that's really the instruction for the knowledge and intent now. Sure. I mean, listen, I think reasonable parties could disagree, and you could potentially argue that a good faith instruction is redundant if there's a robust instruction up front. But we have lots of cases where we charge a knowledge and intent, and on top of that we also provide a good faith instruction to make sure the jury understands that concept. So I don't think Ruan precludes a good faith instruction so long as it correctly emphasizes the subjective nature of that standard. So even if we agree with you that post Ruan the instruction, at least with respect to the good faith instruction, was wrong, then we have to get to harmlessness, right? That's right, Your Honor. And so I guess my question is, and maybe this has to be parsed on a per count basis, but I'm looking at counts 22 and 23. That's Maria Scalzione. And there the evidence in the record shows that Dr. Perasmo was aware from insurance companies that she's doctor shopping. They alert him to this chronic opioid use and doctor shopping. There's then a call from her sister in which her sister threatens to report Dr. Perasmo if he continues to prescribe opioids to Scalzione because she's not taking them. She's selling them. And so I'm trying to understand why the arguably incorrect jury instruction would have made any difference with respect to this patient. So it's very difficult to get super in the weeds with 20 patients in an argument. But this is one that really stands out. Right. And I think it's important to step back and actually make sure we're looking at the entire context. So with Scalzione, October 2014, the family threatens to call the police and reports diversion. Right. He actually stops prescribing at that juncture. And he refers her out to pain management. So it's not as if Dr. Perasmo was acting as a drug dealer. Right. I don't care about that. I don't care about diversion. I certainly don't make the note in my own chart that I'm worried about this fact that I've gotten a call from family members. Right. It's so easy to fall into a conversation of did Dr. Perasmo do things right or wrong here? Did he make a mistake? And this is exactly what the trial devolved into. It was a referendum on reasonableness as opposed to a subjective intent. And what's important is when he gets this information, he notes it in his thing, in his charts, and he stops prescribing, actually, and he refers her out to pain management. And what happens, and the government will point this out, but what happens is after two months, she comes back to him, tells her that she had been obtaining, continuing to obtain pain medication from her pain management doctor, but that he's left and she's down to one pill. And he throws up his hands. He says, okay, one last time, I'll give you two weeks of pain medication. But, again, the evidence was that she wasn't taking them. She was selling them. Her blood screens are negative for opioids. There's no reason to think, based on this evidence, that she needs these drugs to manage pain. And so, again, I'm just trying to understand why it is that the proper jury instruction would have made any difference with respect to at least this patient. This is, and keep in mind, this is one event. He's been treating this patient for years and years. She had devastating medical conditions. She had a shattered spine is what's documented in the file. But the evidence that was presented is that he knew she wasn't taking the oxycodone that he was prescribing. He gets, and again, we have to be so careful about how we read into these records and the assumptions that we're making. What he gets back is a negative urine test, right? It's a urine test that doesn't reflect the drugs in her system. And you're absolutely right. That is a cause for concern, especially when you put it together with family members making complaints. But no drugs in your system can also be an indication that you're taking these medications too quickly, which was a common refrain here. He had patients telling him, this medication isn't enough to control the insane chronic pain that I'm experiencing. And, yes, it's true. Many of these people had serious red flags of addiction, but each and every one of them also had very real medical conditions, sometimes crippling, life-altering medical conditions. And so this isn't a case about a pill mill. It's not a case about systemic diversion. It's not runners. It's not undercover agents coming in. It's not cash payments. It's about an elderly doctor struggling to deal. And let's be clear. Dr. Prasno had thousands of patients. The government went through those files, and they cherry-picked 20 of the most problematic, difficult patients he had, people struggling with both addiction issues and real pain issues. And they take these files, and they cherry-pick bad facts in there without presenting the entire picture of what was going on. Well, but, look, the jury was asked to decide on each of these counts. And so I guess it's just hard for me to see, for some of them, why it is that the proper instruction would have made a difference. But you've attempted to answer that. Were there other things you wanted to cover? Your Honor, I just, you know, I think I just want to emphasize that the court should be very careful in sort of taking the nuggets of information hand-selected by the government in their brief, without going and looking at these medical records very carefully and looking at the course of treatment. But that's what a harmless error analysis is, right? We have to look at what the record was. And whether or not this court can infer, not whether he was being a good doctor, right? This isn't a question of whether he was being reasonable.  What we're doing is we're putting ourselves in the shoes of the jury to say that, properly instructed, is it beyond a reasonable doubt that the jury would have reached the same result. That's basically the standard, right? I found subjective intent on behalf of Dr. Peresma. Right. And I strongly believe that this record, and I suppose the court could go through every single one of these patients, but I don't believe that for any of these patients the record supports an inference. And let's be clear. Is that kind of what we have to do? Don't we have to go through each one of these? Certainly. I think the court can engage in that record. And I think if it is inclined to do so, what I would submit is that we should probably provide the entire record, the entire medical record to the court. I mean, there's 5,000 pages of medical records of charts that went into evidence here. I submitted a small fraction in the appendix because there's lots of personal information in there and it all needs to be redacted. But I don't think the court needs to get there because there are common factors with all of these patients. And the common factors are that in each and every case where there's a red flag, he's documenting it. That's not what a drug dealer does. With each and every case there's a red flag, he's reacting to it. He again and again tries to wean these patients off. Every single time he's seen these red flags, he's referring these patients to pain specialists. He's referring them out to surgeons. And time and time again they're not getting the relief they need. Now, does he make a mistake by continuing to dispense drugs longer than he should? I mean, let's be clear. He also stopped dispensing drugs in each and every one of these cases on his own. But even if he made a mistake, even if he's acting unreasonable, that's not the threshold here. The question is whether the government can prove on this record beyond a reasonable doubt that the jury necessarily would have convicted him, that they necessarily would have found subjective intent. If we rule in your favor on that issue, often there are issues that are likely to arise on retrial, so we go ahead and address them. I'm looking at your objection to the Waldman testimony, and it seems to me that your argument is very tightly bound with the jury instruction that was given. So if we conclude that that instruction was error, do we not need to reach that question for purposes of providing guidance for remand? I think the Waldman instruction, or the Waldman testimony, right? There's two parts of the Waldman testimony that I find deeply concerning. Number one, that he basically opined that the defendant's conduct was objectively unreasonable. And you're right, that dovetails very much with the instructional issue. And it highlights why this is not harmless error, because you have a jury here that was basically told by the government's expert what result to reach given this charge. So you're right, those combine together. I think the other thing that really troubles me about Waldman's testimony is that it was entirely incomplete as to the regulations, right? He provides his testimony on the one regulation which helps the government, and he completely omits testimony regarding arguably the irrelevant regulation. But that aspect, you could deal with on a retrial, because now you- You're right. So in other words, I'm just trying to confirm my intuition that the evidentiary challenges wouldn't be things that we would need to exercise our discretion to reach in the event that we agreed with you on. I think you're correct, Your Honor. I think those arguments dovetail. All right. Well, you've reserved two minutes for rebuttal, Mr. Christensen. Thank you. We'll now hear from Mr. Lefebvre. Am I pronouncing that? Yes, that's correct, Your Honor. Good morning, Your Honors. May it please the Court. I'm Michael Lefebvre. I represent the government in this matter. I also represented the government in the district court below for the original trial of this matter. I think it's beyond dispute, really, based on the case law in Rouen, and also the positions taken by the appellant today, that the initial instruction on subjective intent given by the district court is correct and does comport with the standards set forth by the Supreme Court in Rouen. In its charge, it instructed the jury explicitly that knowing and intentionally applied not just to issuing the prescription, but also knowing and intentionally issuing the prescription, knowing it was unauthorized. Well, you say that, but are you referring to the very first statement of the element, second, that the defendant knowingly and intentionally prescribed the controlled substances outside the bounds of professional medical practice and not for a legitimate medical purpose? Yes. I mean, isn't there at least an ambiguity, which then gets addressed by the subsequent good faith instruction, as to whether the knowingly and intentionally describes the fact of prescribing the controlled substance or whether it applies to the nature of the controlled substance as being outside the ordinary practice? Because the instruction then goes on to talk at great length about how you determine whether something lies outside of the bounds of professional medical practice in a way that doesn't in any way tie it to the scienter of knowing and intentional. Well, I think the first time the district court instructed on it, it was that explicit. There are several times it references throughout. The second time, I believe, it also is very clear that the knowing and intentional, I believe it's at page 2405 of the appendix, that that attaches to the authorization piece, and it said it was two separate elements, that the prescription piece was element one and that the unauthorized piece was element two, but attached knowing and intentionally to both at that stage. It does, again, reference those elements later, and at one point saying that he acted with, but I think the way that it was initially described. Can you read me that? Because I'm looking at 2405. I'm looking at those pages, and I think I must be looking at the wrong words. Yes, Your Honor. Because I'm not seeing the way that you've paraphrased it in quite the same way. On 2405, the court said, second, that the defendant knowingly and intentionally prescribed the controlled substances outside the bounds of professional medical practice and not for a legitimate medical purpose. So the question is whether the knowing and intentionally modifies or describes the prescribing the controlled substances or whether it also applies to the controlled substances that were outside the bounds of professional medical practice. I see Your Honor's question. That's the ambiguity that I think gets resolved later with the good faith instruction. I think it does get resolved later because it is discussed a couple times, but I think it also is sort of clarified by the court's first instruction on distribution, and then it later in the same instruction describes that distribution is prescribing. So I think that sort of compartmentalizes that first element, and then the second element clearly is the knowingly and intentionally prescribing out, you know, issuing outside the authorization. So on that element, I think the court's instruction was fully compliant with Ruan. I think a panel of this court found a very similar, if not identical, instruction post-Ruan to be compliant. That was issued in United States v. Cristobal. Turning to the argument that the inclusion of the word reasonable in the good faith instruction somehow rendered it incorrect, I don't think that Ruan did not say that explicitly at all, and I don't think in the full context of the instruction here that that did that. It did not have that effect. Specifically, when Judge Azraq instructed the jury on the good faith instruction, it was clear she was talking about a subjective standard and that on multiple occasions, I believe, I'm sorry, on the occasions she instructed on good faith, the district court said that it was he reasonably believed. So it fully and clearly emphasized that the standard for good faith was a subjective one. Obviously, I don't think attaching reasonableness to that makes that instruction error. When the government argued about the standard in summation, contrary to counsel's assertions, the government never argued in its initial summation at all that there was any subjective standard. In fact, I'm sorry, objective standard. The only time in its initial summation that the government even used the term objective in connection with the law legitimate medical purpose. In the government's rebuttal summation, it did say on one occasion that the standard is subjective. However, it couched that in we expect the court to tell you, and at other places in the government's summation, it did very clearly tell the jury if anything the government said about the law was wrong, that it should certainly follow what Judge Azraq said. And ultimately- I'm confused. You seem to be suggesting that the statement the doctor acted in accord with what he should have reasonably believed to be a proper medical practice is the same as saying what he subjectively believed to be a proper medical practice? I don't- Reasonably and subjective are the same in that sentence? I believe that it's a subjective standard of reasonableness is essentially what the court articulated by saying- What is a subjective standard of reasonableness? Well, I think this sort of goes to what Your Honor's question earlier was about. Could a good faith instruction even be needed in a post-reward? I'm just saying, I'm just having trouble getting to where you were asking us to go. I think I agree with you about the first part of the charge. But then the good faith says that the doctor has to have acted in accord with what he should have reasonably believed to be a proper medical practice. And you're saying reasonably is fine because it said what he should have reasonably believed, suggesting that's really a reference to a subjective standard. But it seems pretty clear that that's a reference to an objective standard. Your Honor, I do think it's somewhat different than what you articulated. The court didn't say he should have reasonably believed to be the standard. It just said that it was what he reasonably believed to be the standard. Putting it fully in what he believed and then the question of whether his subjective belief- Well, but I'm reading from Wexler, and that's what he should have reasonably believed. And we said that that's, I mean, that's not good. That's not going to work. Well, I would agree, Your Honor, but that's not what the jury was charged on here. Because I do believe there was another, I think it was the Kahn case on remand, also had an issue with what a reasonable doctor should believe. And that good faith instruction was also no good. Here there is no what he should have believed. Here it's just what he believed, what he reasonably believed. And that being said, Your Honor, when you look at Ruan, there's really no other way, and the Supreme Court sort of acknowledges this, the way you evaluate a defendant's subjective beliefs are against how unreasonable they are when compared against an objective standard, those objective criteria of usual course of professional practice and legitimate medical purpose. And that's why I think it comes back to what Your Honor had said earlier about is a good faith charge even really practicable post-Ruan? Because essentially it wouldn't be, because except for a very small potential area if someone could imagine where someone's subjective beliefs are- Well, I think that may be true, but I guess it doesn't solve our problem in this case. So you're insisting that there is no error, but your fallback is harmlessness, I guess, right? Yes, Your Honor. Maybe we should get there. I've already asked your colleague, Mr. Bresson, a number of questions about harmlessness. It seems to me that some counts are stronger than others. Would you agree with that? I would say yes. Certainly there's different quantums of evidence for each particular count, but I do think that when evaluating harmlessness here and whether or not the defendant's subjective intent is proven, I don't think the court is forced to rely and sort of parse each count individually when evaluating the defendant's intent. Obviously it may change from patient to patient, but you- Wait, why would we have to do that count by count? No, I don't know. You can evaluate them count by count, but when determining the defendant's intent overall, you can certainly consider the way he practiced and the way he handled these situations from one to the other in determining whether or not he was subjectively intending to prescribe outside of his authorization as a physician. So in evaluating his intent, I don't believe this court or jury would have been limited to just considering his intent necessarily, the evidence of intent I should say, as to each count based on just the evidence of that patient. I don't think I'm suggesting that, but I'm just saying with respect to certain patients, there's much greater indicia that would cut against a finding of a subjective belief that this was within the bounds of legitimate medical care. Your Honor, I would submit based on the evidence before the jury that there would be no reasonable doubt, even under the subjective good faith standard without the word reasonable present in it. But don't they kind of rise and fall together? Isn't it defense? I'm an overworked, really busy doc with lots and lots of people, including desperate people who are telling me they're in pain. And yeah, in retrospect, I may have prescribed things for people who I shouldn't have prescribed things for, but I never did so intending to violate. I mean, given that that's the defense and the overall theory of the case, would it make sense for us to parse each count individually to try to figure out how off base the doctor's subjective intent was? No, I think that's what I was sort of saying earlier. I think you can evaluate all of that evidence, the entirety of the case. They rise and fall together? Yes, essentially. Okay. Just to touch briefly on the expert testimony issue, I do think that in the absence of any instructional error, it's very clear that Dr. Waldman's testimony is properly admitted. This type of expert testimony has been upheld again and again by various circuits across the country in numerous cases. I believe at least seven other circuits have upheld this type of testimony as well as courts in this circuit. Touching very briefly on the admission of the other evidence, the other standards that Mr. Brissenden had brought to the court in his brief, I do think that that there sort of assumes that the defendant was practicing under those and there was no evidence that they were even relevant. Defense counsel, to raise those standards, the California standards, sort of defies logic to think that a defense counsel would raise something there's no reason to believe his client even is aware of. Furthermore, the New York standards that were admitted by the district court were certainly not error, as very similar evidence was upheld also in the Crystal Ball case, where there was testimony, not just expert testimony, but testimony about what the standards of practice in a given area of medicine were in New York, and obviously that was a case in which the doctor was practicing in New York. So here, admitting evidence of what the standards are, those are just further objective criteria that the Supreme Court in Rwan essentially said was important evidence to evaluate a defendant's intent or his lack of good faith in prescribing opiates. If there are no additional questions, Your Honors, I would rely on the brief. All right. Thank you, Mr. McFadden. Thank you. We'll now go to Mr. Brissett for two minutes of rebuttal. Justice Brissett, I have to confess I'm somewhat disturbed because I feel that the government is rewriting history here to some degree. They fought tooth and nail for this instruction. They knew exactly what its significance was, and they fully capitalized it on trial, at trial. In summation, defense counsel stood up and argued for two days that Dr. Prasno acted with subjective good faith, and when he sat down, the prosecutor stood up and told the jury, essentially, that's all well and good, but it's irrelevant because the standard is objective. This is the quote, Dr. Waldman testified that these 35 prescriptions were not reasonable. It's not what the defendant thought was reasonable in good faith, but what was reasonable under the prevailing standard, and that's at A2372. The point is the government is now coming in and claiming that this instruction, which they capitalized on and which they fought for, meant something entirely different, and it's somewhat, I don't want to use the term disingenuous, but I don't think it squares with the record here or with the case law. I also want to push back on the notion that the opening portion of the judge's instructions were somehow a model of clarity or somehow solved this problem of creating an objective standard. First of all, even if those instructions- I'm not sure we need to break it into pieces because they have to be read together. I think the only point is that but for the good faith claim, I think the good faith instruction, there would be a pretty decent argument, I think, that this did require knowledge of the fact that the prescription was outside of the legitimate medical purpose and the district court did say that it can't be negligence, carelessness, or anything like that. But I don't know that you need to go there. It seems to me that we're recognizing the good faith instruction is a problem. I certainly don't want to beat a dead horse in that regard. I would say that if the court is inclined to conduct an inquiry of patient by patient due to constraints, I didn't do that in my brief, but if the court refers to our Rule 29 submission, there is a patient by patient analysis which provides something of a rebuttal as to the points that the government would like to- Well, I mean Judge Azraq basically did the same. Judge Azraq, she did, but she also found that this instruction was proper. No, I understand that. She wasn't doing a Rule 29 analysis under the Ruan standard, but she certainly lays out the evidence. But the burden, of course, shifts on appeal if this court makes a determination that the charge was wrong. I'm just saying that the point is that the record is pretty well summarized in Judge Azraq's Rule 29 order. We have to evaluate it under a different standard if we find that the instruction was error. Certainly. But the facts, are you saying that Judge Azraq misstated the facts? I would never suggest that she misstated the fact, but when you write an opinion, there's only so many facts that can go in the opinion. So I would ask the court to consider the entire record as well, which includes the pro-defendant facts, which are included within that Rule 29 submission, I guess is my point. And obviously, I don't need to belabor this, but Judge Azraq was making an assessment, viewing the evidence in the light most favorable to the government. If there's an erroneous instruction here-  It's now the government's burden to demonstrate beyond a reasonable doubt that the error was wrong. No, I think we got that much. Thank you very much. Well, thank you both. Well argued. We will reserve decision.